CARL EIDELSBURGER,

*vs.*

MILDRED VIRGINIA BALLANCE and MARTIN EIDELSBURGER, JR.

*New Castle, January 15, 1947.*

*Thomas Cooch,* of the firm of Marvel and Morford, for complainant.

*David A. Eastburn* and *H. Stanley. Lynch,* of the firm of Eastburn & Eastburn, for defendants.

SEITZ, Vice-Chancellor: Complainant asks this court to declare that the defendant holds legal title to an undivided one-half interest in certain real estate under and subject to a resulting trust in favor of complainant.

The complainant Carl Eidelsburger married the defendant, Mildred Ballance, on October 26, 1940. While another party was joined as a defendant, it is conceded that he has no interest in the matter, so that reference hereafter to the defendant is intended to mean only the defendant Mildred Ballance. By deed dated March 16, 1942 and duly recorded, Leonard and Elizabeth Hobbs conveyed the real estate here involved to the complainant and his wife. On September 26, 1942, the complainant was admitted to the Delaware State Hospital suffering from general paresis or syphilis of the brain. Up until this time, complainant and defendant lived together. Thereafter, on August 19, 1943, the defendant filed in the Superior Court of this State a

petition for annulment of her marriage to complainant on the ground of fraud and misrepresentation alleging specifically that the defendant (the complainant herein) knew at the time of his marriage that he had syphilis, and further alleging that defendant represented himself to be a healthy person, yet knew or should have known that at the time of the marriage "he was suffering from an unsoundness of mind, to-wit, paresis" which was unknown to the petitioner. On October 18, 1943, a decree of annulment was granted and became final on October 19, 1944.

On June 9, 1943, this court appointed a trustee for the complainant, but by this court's order dated March 27, 1946, the complainant was found to be fit once again to manage his own affairs and his trustee was discharged and complainant was restored to the control of his property.

After the discharge of his trustee, the complainant filed this bill of complaint seeking to impress a trust in his favor on the defendant's undivided one-half interest of the real estate, which property is held in the name of the complainant and the defendant. Complainant, through the brief filed by his solicitor, bases his right to relief on the contentions that he paid the entire consideration for the real estate and that at the time of the purchase, due to the disease from which he was suffering, he lacked the mental capacity to make a binding gift to the defendant. Defendant's answer denies that complainant paid the entire consideration and denies that complainant's mental state was such as to render it impossible for him to make a legally binding gift to the defendant at the time in question.

At the final hearing, both parties introduced evidence as to who paid the consideration and as to the complainant's mental condition at the time of the purchase of the property.

The solicitors for defendant have raised a great many questions in their brief, but complainant's solicitor makes only two contentions, both of which are denied by the

defendant, and both of which complainant must here sustain if he is to be successful. They are:

(1) Complainant paid the entire consideration for the real estate.

(2) Complainant lacked the mental capacity necessary to make a gift at the time the property was purchased.

As stated, complainant recognizes that he must sustain both contentions in order to be successful here. As to the complainant's first contention, defendant introduced proof tending to show that she paid a small part of the purchase price, but I shall assume that complainant paid the entire consideration for the property.

Complainant's second contention involving his lack of mental capacity at the time of the purchase of the real estate requires a somewhat elaborate consideration of the evidence. Complainant relies almost entirely on the testimony of Dr. Tarumianz—an expert on mental disorders —and an alleged admission by the defendant contained in her petition for annulment, which alleged admission consisted of an allegation therein that complainant "was suffering from an unsoundness of mind, to-wit, paresis," at the time of their marriage.

Dr. Tarumianz, testifying as an expert on mental disorders testified that he examined the complainant at the time he was committed to the Delaware State Hospital in late September, 1942. Since the real estate transaction in question occurred about March 16, 1942, it is evident that Dr. Tarumianz could not testify of his own knowledge as to the mental condition of the complainant in March of 1942, but could only testify as to the complainant's possible mental condition at that time based on his subsequent examination of the complainant and his professional competence and experience with the same general type of disease. As he himself testified when called as a witness for complainant:

"Not having examined the patient four months prior to that, we have simply to accept the statement made by the wife and the sister of the patient, who at that time did not consider any personal affairs at all connected with property, and so on and so forth. I am afraid no one can determine definitely the date that the man began to be queer in reaction toward normal responsibilities. It could have been a year or two, and it could have been only five months or six and a half months, so I am afraid I can not as an expert definitely make a statement, although I can say this much, that when the man came to the Delaware State Hospital he was unquestionably not an acute case of immediate nature. He was certainly a long standing case. Now, whether that long standing was four months or six months or twenty-six months, I can't verify."

The quoted testimony indicates that Dr. Tarumianz realized he could testify with no assurance as to the actual mental condition of the complainant at the time he purchased the real estate. For this reason, the testimony of those laymen who knew and dealt with the complainant at or about the time of the purchase of the property is of substantial value as representing tangible evidence at the time in question as opposed to skilled conjecture.

Let us examine some of the testimony of the lay witnesses with respect to the mental condition of complainant about March, 1942 when he purchased the property. The attorney employed by the complainant to handle the purchase of the property in question testified that on the occasion or occasions when he saw the complainant he "noticed nothing unusual in his behavior." The seller and his wife both testified that they noticed nothing unusual about the complainant when he was negotiating the sale, and the seller at least had known him quite well for many years.

Without discussing it in detail, it appears that the complainant's own testimony is more consistent with a finding of mental competency than incompetency during the period when the transaction took place. Moreover, at the time of the purchase of the property the complainant was regularly employed as a salesman, and in that connection handled sums of money. He also visited his in-laws regularly and

played various games of cards with them with his usual acumen. Moreover, the complainant in testifying was quite clear as to all the events surrounding the purchase of the property and, as I interpret his testimony, even remembered his attorney's mentioning that it was customary for property to be taken in both names.

Without taking up the other testimony, which is even more favorable to defendant but which was introduced on her behalf, it is apparent that the lay witnesses who had no reason to be partial to the defendant in this matter were all of the opinion based on personal observations at the crucial date that the complainant was mentally competent at the time of the purchase of the property.

We come now to complainant's contention that the allegation in defendant's annulment petition to the effect that complainant at the time of the marriage "was suffering from an unsoundness of mind, to-wit, paresis" constitutes an admission against interest which affects defendant's credibility. In my opinion, the allegation falls far short of indicating that defendant has here taken a position inconsistent with that taken in her petition for annulment. At best, the alleged unsoundness of mind was an alternative ground which the petitioner (defendant here) did not seek to sustain. All the testimony in the annulment proceeding is before me, and it appears that Judge Speakman conducted the following examination of the petitioner—the defendant here:

"Q. At the time of the marriage what was your husband's mental condition? Did he seem to be all right mentally? A. Yes. As a matter of fact, his stomach was supposed to be ill at the time.

"Q. But mentally he was all right? A. Yes.

"Q. I don't know whether you can answer this question or not. The doctor may. Was his mental condition a result of his venereal disease? Did that come about because of his venereal disease? A. Yes.

"Q. That is your information? A. Yes.

"Q. Now, I am not concerned about any of his ailments at the time of the marriage, excepting the venereal disease. At the time of the marriage you had no information as to his condition? A. No.

"Q. He did not disclose it to you? A. No.

"Speakman, J.: I assume that you are prepared to prove by a witness that at the time of the marriage he was suffering from a venereal disease?

"Mr. Eastburn: Well, I don't have the doctor here today, but I expect to do so."

It is apparent from the quoted testimony that the annulment was procured on the ground of fraud on the part of the husband in concealing his physical condition from his wife, and not on the ground that he was mentally incompetent at the date of the marriage. The decree *nisi* confirms this fact. Furthermore, it is readily conceivable —as I find to be the case here—that complainant could have been suffering from an unsoundness of mind, to-wit, paresis, at the date of his marriage, and yet such unsoundness might not have been of such a degree as to render him legally incompetent to make a binding gift of the property.

The testimony not only demonstrates that complainant failed to meet the burden of proof imposed on him to show incompetency, but that, on the contrary, the complainant possessed the ability to comprehend the nature and effect of the transaction and to act with discretion in the matter. See *Reeve v. Bonwill*, 5 *Del. Ch.* 1. I find that complainant was competent to make the gift of the interest to his wife in March, 1942.

Complainant tacitly concedes that if he was legally competent at the time of the purchase of the property to make a gift, he and the defendant each now own an undivided one-half interest in the real estate as tenants in common. Since I have found that he was competent at the time in question, and there being no question of fraud, it follows that the parties possess the interest stated. The division

of the rental will, of course, follow in accordance with this declaration of the legal rights of the parties. In view of my conclusion and the tacit concession of complainant, it is unnecessary to consider the many other points discussed in the defendant's brief. The bill of complaint should be dismissed.

A decree accordingly will be advised.